CLARENCE Y. AKIZAKI and DAVID C. McCLUNG
*v.* HIRAM L. FONG, JR. and EDWARD E. JOHN-
STON and THOMAS P. GILL as LIEUTENANT
GOVERNOR OF THE STATE OF HAWAII.

No. 4864.

NOVEMBER 11, 1969.

RICHARDSON, C.J., ABE, LEVINSON, JJ., CIRCUIT JUDGE
HAWKINS FOR MARUMOTO, J., DISQUALIFIED, AND
CIRCUIT JUDGE KING FOR KOBAYASHI, J.,
DISQUALIFIED.

OPINION OF THE COURT BY RICHARDSON, C.J.

In the November 1968 election to select six representa-
tives in the House of Representatives from the Fif-

teenth Representative District, five candidates were clearly elected without contest. The present case involves a controversy over the sixth seat.

In the final tabulation of the votes, the Republican candidate, Fong, received two more votes than did the Democratic candidate, Akizaki. Akizaki contested the election in the court below and proved that of the ballots counted, at least nineteen were clearly invalid. These were absentee ballots which, because of late postmarks, failed to meet the requirements of HRS § 14-8.[1] HRS § 14-8 provides that an absentee ballot received not later than noon on the sixth day following a general election may be counted, but only if it is postmarked not later than the day before the election. Due to a mistake on the part of the election officials, nineteen ballots postmarked too late to be opened and counted were nevertheless opened and counted. In the process they were commingled with valid absentee ballots so that it could not later be determined for whom the invalid ballots had been cast. Since the number of invalid ballots greatly exceeds the margin of victory, it is obvious that their presence could have affected the result. The court below resolved this problem by discarding 174 absentee ballots, among which were the nineteen invalid ones. On the basis of a tabulation without these 174 ballots, the court declared Akizaki to have been the winner of the election. From this determination Fong appeals to this court.

Subsequent to the decision of the court below and pursuant to the recommendation of its credentials committee, the House seated Akizaki. On the basis of the House's action, Akizaki claims that the controversy has been finally determined; that the case has been

---

[1] HRS § 14-8(1) provides, in part, that:
. . . no [absentee] ballot shall be accepted by the county clerk unless the reply envelope is postmarked no later than the day before the . . . general election. . . .

mooted; and that this court should not rule upon the question, or should simply affirm the judgment of the court below. Fong claims that discarding so many valid absentee ballots is an unwarranted disenfranchisement of many absentee voters whose votes were validly cast. He also claims that because jurisdiction over election contest cases is granted to the courts by the Constitution of the State of Hawaii, Article II, Sec. 7,[2] this court may properly review the decision of the court below and reach an appropriate result, notwithstanding the action of the House.

The fundamental interest to be protected here is that of the people of the Fifteenth Representative District in choosing whomever they please to represent them in the House of Representatives. The right to vote is perhaps the most basic and fundamental of all the rights guaranteed by our democratic form of government. Implicit in that right is the right to have one's vote count and the right to have as nearly perfect an election proceeding as can be provided. The result we reach must be consistent with these principles.

Before deciding the substantive issues raised in this appeal, we must determine the basic underlying constitutional question presented. Counsel for appellees have urged that, since the House has now seated Akizaki, this court may not and should not further consider this election contest. This claim is based upon their reading of Article III, Sec. 13 of the Hawaii Constitution, which says, in part, that "[e]ach house shall be the judge of the elections, returns, and qualifications of its members." Appellants, however, argue that the controlling provision is Article II, Sec. 7 of the same document, which states that

---

[2] Article II, Sec. 7, formerly a part of Article II, Sec. 5, reads:
Contested elections shall be determined by a court of competent jurisdiction in such manner as shall be provided by law.

"[c]ontested elections shall be determined by a court of competent jurisdiction in such manner as shall be provided by law." We must resolve the apparent conflict between these two provisions before proceeding further. Simply stated, the question is: Should the courts or should the legislative body be the final arbiter of the dispute in the event of an election contest involving a legislative seat? We hold that the courts are required by the Hawaii Constitution to be the forum and the final arbiter in such disputes.

At the outset, it is important to note that the legislature has enacted HRS §§ 12-101 to 12-105 to implement Article II, Sec. 7 of the constitution. These sections provide that suit may be brought in the circuit court to contest an election; that the court, after hearing the case, should determine the winner of the election if possible; and that if, because of a mistake on the part of the election officials, the court cannot ascertain the correct result, it should invalidate the election and a new election should be held.

It is true that Article III, Sec. 13, states that "[e]ach house shall be the judge ...;" but in determining what each house is to judge, this provision must be read in context, along with the other provisions of the constitution, including Article II, Sec. 7. In this regard, it is helpful to note the analysis of a similar problem by the United States Supreme Court in *Powell* v. *McCormack*, 395 U.S. 486 (1969). The United States Constitution includes language identical with that found in Article III, Sec. 13 of the Hawaii Constitution, that "[e]ach house shall be the judge of the elections, returns, and qualifications of its members." In *Powell*, the United States Supreme Court considered the problems raised by this language in regard to judging *qualifications*. The Court held that Congress was empowered to judge only the qualifications "expressly

prescribed" in the Constitution itself, *Powell, supra* at 522 and 548, and not more general qualifications, or qualifications extrinsic to the Constitution. In other words, the Congress' judicial power with respect to qualifications extended only to investigation and determination of whether the specific membership requirements set out in the Constitution had been met.

Similarly, we hold that under the Hawaii Constitution the House's function in judging the *elections* of its members extends only to ascertaining whether the constitution has been complied with; that is, whether the parties have properly invoked the jurisdiction of a competent court to judge the contest under Article II, Sec. 7 and the statutory implementation of that provision.

This interpretation of the constitution is clearly the correct reading, as well as the most consistent with protection of the electorate. For the framers of our constitution to have entrusted the final determination of such controversies to the legislative body would have been unwise. It would have provided a dangerously effective method of perpetuating the existing majority in office, with no recourse available to the people. While we do not mean to assert that the House in this case had any questionable motives, it is nevertheless interesting to note that the House vote seating Mr. Akizaki was divided strictly along party lines.

The point is that the constitution recognizes that the courts alone are the sort of neutral and disinterested body which ought to consider and to decide election contests.

We note that the legislature has apparently concurred in this recognition by enacting detailed procedures for resolution of these disputes by the judiciary in HRS §§ 12-101 to 12-105. To say, therefore, that a house of the legislature could undertake a binding and independent resolution of an election contest would be inconsistent

with the legislature's own statutory action, as well as contrary to the requirements of our constitution.

Moreover, we note in this case that it was the demonstrated intent of the House to give great weight and deference to the decision of the judiciary. We rely for this proposition upon the intent expressed in the reports of the credentials committee. In its first report, dated January 15, 1969, and titled "Special Com. Rep. No. 1," at p. 3, that committee deferred action on the matter of seating one of the candidates pending the decision of the circuit court. In its second report, dated February 24, 1969, and titled "Special Com. Rep. No. 2," rendered after the decision of the circuit court but before this court had heard the appeal, the committee recommended the seating of Mr. Akizaki, but again expressed its deference to the decision of the circuit court and noted that it could not appropriately make a decision that might later be in conflict with the resolution of the appeal by this court.[3]

Appellee Akizaki nevertheless argues that the questions presented are moot; and that even if they are not moot, they are nonjusticiable because the controversy is basically a political question. In light of our reading of the effect of Article II, Sec. 7 and Article III, Sec. 13 of the constitution, however, these contentions are unavailing.

Clearly the case cannot be made moot by the seating of one of the candidates by the House during the judicial determination of the contest. Such a reading of the constitution would emasculate both the constitutional mandate of Article II, Sec. 7 and the statutory provisions that provide for judicial resolution of election contests. We

---

[3] "Any recommendation by your Committee at this time that is contingent upon the possible decision of the State Supreme Court is conjectural and clearly without the scope of inquiry and task of your Committee . . . ." Special Com. Rep. No. 2, p. 3.

think such an interpretation cannot have been intended by the framers of our constitution.

We think the case does not present a nonjusticiable political question. The issue is expressly committed to the courts in the constitution. The standards are set out in the statutes written by the legislature and are judicially discoverable and manageable. No lack of respect for a coordinate branch of government is present, since the constitution requires the courts to act when their jurisdiction is properly invoked. In fact, the House has expressed deference to the judgment of the courts at every step of the proceedings.

It remains to be decided whether the result reached by the court below was correct. We hold that it was not, and that a new election should have been ordered. Because of the commingling of the valid and invalid absentee ballots, there is simply no way to determine what the actual result of the election was, and who should therefore be declared the winner. In such a situation, HRS § 12-103 directs the court to invalidate the election.[4]

The trial court's approach was plausible; but to excise the entire absentee vote contained in the 174 ballots excluded by the court, in order to eliminate the nineteen ballots known to be invalid, inflicts too harsh a result on those absentee voters whose votes were validly cast.

Pursuant to HRS § 12-105, this court may, in election contest cases, enter any judgment the circuit court would have been authorized to enter. Our judgment is, as provided in HRS § 12-103, that the election was invalid for the reason that a correct result cannot be ascertained

---

[4] HRS § 12-103 provides, in part:

. . . The judgment may invalidate the election on the grounds that a correct result cannot be ascertained because of a mistake or fraud on the part of the election inspectors; . . . . If the judgment should be that the election was invalid, a certified copy thereof shall be filed with the governor, and he shall duly call a new election to be held within sixty days after the judgment is filed. . . .

because of the mistake we have noted on the part of the election officials in opening the late-postmarked envelopes and commingling those ballots with ballots validly cast. Therefore, in accordance with HRS § 12-103, and in order to protect the right of the people of the Fifteenth Representative District to choose their representatives, we invalidate the election as between Fong and Akizaki. As set out in HRS § 12-103, a certified copy of our judgment shall be filed with the governor, so that he may call a new election as between Fong and Akizaki as provided by the statute.

Reversed.

*Herbert Y. C. Choy* (*Fong, Miho, Choy & Robinson* of counsel) for defendants-appellants.

*Frank D. Padgett* (*Walter H. Ikeda* with him on the brief, *Padgett, Greeley, Marumoto & Akinaka* of counsel), for plaintiffs-appellees.

*Morton King* and *Thomas M. Pico, Jr.*, Deputy Attorneys General (*Bertram T. Kanbara*, Attorney General with them on the brief) for defendant-appellee.

DISSENTING OPINION OF ABE, J.

The majority of the court holds that there is a conflict between Article II, § 7, and Article III, § 13.

Article II, § 7 reads: "Contested elections shall be determined by a court of competent jurisdiction in such manner as shall be provided by law." The pertinent portion of Article III, § 13 reads: "Each house shall be the judge of the elections, returns and qualifications of its own members...."

The majority court says: "We must resolve the apparent conflict between these two provisions before proceed-

ing further. Simply stated, the question presented is: should the courts or should the legislative body be the final arbiter of the dispute in the event of an election contest involving a legislative seat? We hold that the courts are required by the Hawaii Constitution to be the forum and the final arbiter in such disputes."

It appears to me that the decision of the majority is in direct conflict with the concept of the American form of government where it is deemed that the three branches of government, that is, the executive, the legislative and the judiciary are independent and co-equal. This concept is recognized in the United States Constitution as well as the Constitution of the State of Hawaii wherein, respectively, the executive power[1] is vested in the President of the United States of America and the Governor of the State of Hawaii; the legislative power[2] is vested in the Congress of the United States and the legislature of the State of Hawaii; and the judicial power[3] is vested in the United States Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish, and in one supreme court, circuit courts, and in such inferior courts as the legislature may from time to time establish.

Thus, if there is a conflict to be resolved, it would appear to me that under the concept of independence and equality of the various branches of the government it must be deemed that Article III, § 13, which states that "Each house shall be the judge of the elections, returns and qualifications of its own members", should prevail over Article II, § 7.

---

[1] Art. II, U.S. Const. and Art. IV, Hawaii Const.

[2] Art. I, U.S. Const. and Art. III, Hawaii Const.

[3] Art. III, U.S. Const. and Art. V, Hawaii Const.

Further, I believe a study of the minutes of the Constitutional Convention indicates that this was the intent of the delegates to the Constitutional Convention.[4]

However, for the determination of this case, I believe that it is not necessary for this court to decide whether there is a conflict between the two sections of the Constitution.

The House of Representatives by its independent action has declared plaintiff Akizaki to be one of the six duly

---

[4] Proceedings of the Constitutional Convention of Hawaii, 1950, Vol. II (Committee of the Whole Debates) p. 190:

ASHFORD: May I ask a question of the chairman of the committee in regard to Section 14? Inasmuch as there is a provision in another section for the judging of elections, would the chairman of the committee feel that this is desirable to say, 'Not withstanding any other provision of the Constitution'?

HEEN: I believe what the delegate just stated refers to some provision in the article on suffrage and elections which provides for contested elections by a court of competent jurisdiction. Mr. Chairman, I must state that that provision there gave the Committee on Style some concern and maybe that provision should be eliminated altogether. But, if it is going to be there, remain there, then the suggestion made by Delegate Ashford I think is in order. 'Notwithstanding any other provision in this Constitution, each house shall be the judge of elections and returns and qualifications of its own members.'

CHAIRMAN: With the understanding that the Style Committee will reconcile any difference, will that be satisfactory to Delegate Ashford?

ASHFORD: Yes. In my opinion perhaps the exception—two exceptions should be written into the article on suffrage and elections, that is, with the exception of any constitutional convention or the legislature.

BRYAN: The last time that this question came up, I pointed out that it may not have been exactly pertinent. This covers cases where there is no contest. Judges of elections in the other case, covered under the article on suffrage and elections, there would have to be a contest before it could be determined.

CHAIRMAN: This only applies to the legislature; it does not apply to the executive officers of government that may be elected. Any further discussion? If not, the Chair will put the question.

ROBERTS: I'm not quite clear as to the disposition you are making of this. In Committee Proposal No. 8 on suffrage and elections, there is a sentence which reads, 'Contested elections shall be determined by a court of competent jurisdiction in such manner as shall be provided by law.' Unless you are going to make some exception in the case of constitutional convention elections and elections involving members of the legislature, those two sections are in con-

elected representatives from the Fifteenth District and no action by this court in this case can undo what has been done by the House of Representatives.

The House of Representatives in the proper exercise of this constitutional power by a majority vote of its members declared plaintiff Akizaki one of the six duly elected members from the Fifteenth Representative District and seated him. I cannot agree with the majority that this provision merely gives the House of Representatives power "to ascertaining whether the Constitution has been complied with; that is, whether the parties have properly

---

flict. I think that the Committee on Style should be directed by this committee to resolve the conflict in some specific way, either change the article on suffrage and elections or make some provision in the present article with regard to that.

CHAIRMAN: This language is a common provision, that each house shall be the judge of the election returns and qualifications of its members. The section to which you have reference has to do with the contested election, which is a very different problem.

ROBERTS: Well, there may be a contest of election in connection with the legislature.

CHAIRMAN: Then the legislature is the sole judge.

ROBERTS: Well, unless you construe Section 5 to apply only to those areas other than the legislature and the constitutional convention elections, otherwise there is a conflict.

CORBETT: I don't see how you can make the legislature judge in a contested election of its own members. It seems to me that the point in putting that section in suffrage and elections was to have a body entirely objective in its approach to the problem. You have a group of people sitting in judgment on each other, and it is going to make a very difficult situation. In a contested election where there are facts to go on, it is quite a different story.

CHAIRMAN: That's a provision contained in our constitutional history from its very beginning. Whether or not a person is qualified to sit in the legislature each house determines; it's a political question with which the courts cannot interfere.

Are you ready for the question? All those in favor signify by saying 'aye.' Contrary. Carried.

TAVARES: I now move that it is the sense of this Convention that any conflict in the article on suffrage and elections should be controlled insofar as inconsistent with the sections just adopted by this section.

CHAIRMAN: Is there a second?

C. RICE: I second the motion.

CHAIRMAN: You heard the motion. All those in favor signify by saying 'aye.' Contrary. Carried.

invoked the jurisdiction of a competent court to judge the contest under Art. II, Sec. 7....."

Courts in other jurisdictions have so interpreted similar provisions in other constitutions. *Phillips* v. *Ericson,* 248 Minn. 452, 80 N.W.2d 513 (1957) ; *Beatty* v. *Myrick,* 218 Ga. 629, 129 S.E.2d 764 (1963) ; *Daley* v. *Morial,* 205 So. 2d 213 (Ct. of Appeal La. 1967).

Now, the House of Representatives having acted in accordance with the authority granted to it by our Constitution, I believe it is improper, to say the least, for this court, by its decision in this case, to attempt to undo what the House of Representatives has done. I disagree with the majority court and I believe its decision definitely shows not only utter disrespect but lack of confidence in a coordinate branch of our government.

I do not say the matter of the election has become moot as contended by defendant Lieutenant Governor Gill. However, that issue once having been determined by the House of Representatives by seating Akizaki, this suit should not be used as a vehicle to unseat Akizaki and nullify the act of the House of Representatives. Of course, defendant Fong in a proper action may question the action of the House of Representatives in seating plaintiff Akizaki as one of the representatives from the Fifteenth Representative District, if such action of the House of Representatives denied him his rights under the Constitutions of the United States and the State of Hawaii under *Powell* v. *McCormack,* 395 U.S. 486 (1968).

I believe that the decision of the majority court is setting a very dangerous precedent and will bring about disharmony, if not out-and-out animosity, between the legislative and judiciary branches of government.

Also, how is this court or any other court of Hawaii to enforce the decision of this court? Under the decision, how is plaintiff Akizaki to be denied his seat in the House

of Representatives? Is the House of Representatives to be compelled to expel plaintiff Akizaki?

It should be noted that the House of Representatives was not a party to this suit. In effect, this decision, if enforceable, would nullify the action of the House of Representatives. Now assuming the proposition of the majority court that the constitutional power of the House of Representatives to judge elections and returns of its own members was limited to determine "whether the parties have properly invoked the jurisdiction of a competent court to judge the contest" is correct, can it not be argued that the House of Representatives in seating Akizaki had based its action on the judgment of the First Circuit Court? Therefore, though in the light of the majority decision the seating was founded on an erroneous decision of a trial court, was not the seating based on constitutional authority? Then, is the action of the House of Representatives subject to a collateral attack? That is, can this court by this appeal undo or nullify the act of the House of Representatives?

All these confusions would be eliminated if this appeal is denied on the grounds that the House of Representatives has acted in connection with this matter and defendant Fong's relief would be through the institution of a proper suit to question the act of the House of Representatives.

Thus, I would dismiss the appeal.