STATE OF HAWAII, ex rel., Bertram T. Kanbara, Attorney General, Petitioner, *v.* THOMAS P. GILL, Respondent.

No. 5063:

. November 24, 1970.

Richardson, C.J., Marumoto, Abe, Levinson and Kobayashi, JJ.

OPINION OF THE COURT BY LEVINSON, J.

This case involves the manner in which a vacancy in the State Senate of the sixth Hawaii legislature, arising from the death of a candidate, is to be filled. The present vacancy arose as a result of the death of Senator Kuriyama, which occurred on October 23, 1970. At that time

Senator Kuriyama was one of four Democratic candidates running for the Senate offices representing the Fourth Senatorial District of the State of Hawaii. Under the 1968 reapportionment, the Fourth Senatorial District is entitled to the representation of four State Senators. Senator Kuriyama and the other three Democratic candidates were running unopposed for these four seats.

Senator Kuriyama's death created a vacancy in the candidacy for one of the Fourth District's Senate seats. The respondent, Lieutenant Governor of the State and also its chief election officer, determined, pursuant to HRS § 11-118, which is part of S.L.H. 1970, Act 26, that a substitution of a candidate on the general election ballot could not be made in some practical effective manner. The candidacy was thus declared vacant and notices of the death of Senator Kuriyama were posted at the polling places in the Fourth Senatorial District on the general election day.

On the day following the election of November 3, 1970 the petitioner, the Attorney General for the State of Hawaii, issued an opinion stating the procedures he felt should be followed in filling the Fourth District vacancy. He advised that in accordance with HRS § 17-3 as amended by S.L.H. 1970, Act 26, the vacancy was to be filled at the 1972 general election, pending which the Governor was empowered to make a temporary appointment. The respondent rejected this procedure and on November 5, 1970 issued a proclamation calling for a special election to be held on January 9, 1971, in the Fourth Senatorial District. At that time a State Senator would be chosen whose term of office would expire on the date of the 1974 general election. In accordance with the proclamation, nomination papers were to be filed not later than 4:30 p.m. on November 25, 1970.

The parties filed this case in this court on November 11, 1970 as a submission on agreed facts under HRS § 631-1. Briefing by the parties was completed on November 17, 1970, and oral arguments were heard the next day. The petitioner asked us to enjoin the holding of the special election, contending that HRS § 17-3 as amended establishes the proper procedure for filling the vacancy and that there is no constitutional or statutory provision authorizing the respondent to conduct a special election. Alternatively, the petitioner argues that if HRS § 17-3 as amended is not applicable the Governor may make an appointment under article III, section 6 of the Hawaii Constitution, because there is no other applicable statutory provision, and that such an appointment would continue until the general election of 1974. The respondent argues that HRS § 17-3 as amended is not applicable and that as chief election officer he is empowered to proclaim a special election for the purpose of filling the vacancy.

## I. THE FAILURE OF THE LEGISLATURE TO PRESCRIBE THE MANNER OF FILLING A VACANCY ARISING FROM THE DEATH OF A CANDIDATE.

### A. *HRS § 17-3 as Amended is not Applicable to the Present Case.*

A vacancy exists in the State Senate because only three Senators were elected in the general election of 1970 to represent the Fourth Senatorial District which is entitled to four Senators. HRS § 17-3 as amended by S.L.H. 1970, Act 26, is the only statutory provision dealing with the manner of filling vacancies in the State Senate. The petitioner contends that paragraph (1) of this section empowers the Governor to make a temporary

appointment pending the 1972 general election.[1] Paragraph (1) states:

In the case of a vacancy, the term of which does not end at the next succeeding general election:

(1) If it occurs ten days or more prior to the close of filing for the next succeeding primary election, the vacancy shall be filled for the unexpired term at the next succeeding general election. The chief election officer shall issue a proclamation designating the election for filling the vacancy. All candidates for the unexpired term shall be nominated and elected in accordance with this title. Pending the election the governor shall make a temporary appointment to fill the vacancy and the person so appointed shall serve until the election of the person duly elected to fill the vacancy. *The appointee shall be of the same political party as the person he succeeds.* (Emphasis added.)

The emphasized requirement of the above paragraph makes it clear that this provision was meant to apply only to those vacancies arising from the failure of an elected member of the Senate to serve his full term and not to those resulting from the death of a candidate. If HRS § 17-3 as amended were applied to the latter situation the Governor would be unable to comply with the statutory requirement that his "appointee shall be of the same political party as the person he succeeds." This is because candidates running for Senate offices from a given district do not declare for any particular seat. Thus, when there is an original vacancy, as in the present case, it becomes

---

[1] The petitioner relies only on paragraph (1) of HRS § 17-3 as amended. The other provisions of this section, paragraphs (2) and (3), also contain the requirement that the appointee shall be of the same political party as the person he succeeds. Paragraph (2) is not applicable because it applies only if a vacancy occurs less than ten days prior to the close of filing for the next succeeding primary. Paragraph (3) is not applicable because it applies only if a vacancy occurs less than ten days prior to the next succeeding general election.

impossible to say whom the appointee "succeeds."[2] For this reason it is clear that HRS § 17-3 as amended may not be used to fill the present vacancy.

### B. *The Lack of Legal Authorization to Conduct a Special Election.*

We are in sympathy with the respondent's desire to hold a special election to fill the present vacancy, agreeing with him that it would be the most democratic procedure to follow. However, article II, section 5 of the Hawaii Constitution requires that special elections be held only "in accordance with law." Thus, in order for a special election to be called there would have to be specific legislative authorization. Such legislation exists for filling vacancies in other elective offices[3] but has not been enacted to cover the situation presently before us.

Nor may authorization be inferred from HRS § 11-91, which is part of S.L.H. 1970, Act 26. This section merely sets forth the procedures that are to be followed in informing the voters of the time, place and purpose of an election authorized under other provisions of the election laws. HRS § 11-91 does not grant to the respondent any substantive power to call a special election whenever he deems the circumstances appropriate. Thus it is clear that the manner of filling a vacancy arising from the death of a candidate has not yet been dealt with by the state legislature.

---

2 This problem may be illustrated by assuming that one of the Fourth District's Senate seats in the fifth legislature had been held by a Republican. The Governor would now be unable to say to which political party the current vacancy belonged, since it would be equally logical to say that one of the three newly elected Fourth District Senators "succeeded" to that seat as it would be to hold that the Republican member was replaced by the vacant seat.

3 See HRS §§ 46-21, 70-23 and HRS § 17-2 as amended by S.L.H. 1970, Act 26. Specific legislative authorization also exists for calling a special election when a general election has been invalidated. HRS § 12-103, referred to in Akizaki v. Fong, 51 Haw. 354, 361, 461 P.2d 221, 225 (1969).

## II. IN THE ABSENCE OF A STATUTORY PROVISION, THE GOVERNOR IS EMPOWERED TO FILL THE VACANCY BY APPOINTMENT.

Article III, section 6 of the Hawaii Constitution resolves the problem presented by this case. That provision is as follows:

Any vacancy in the legislature shall be filled for the unexpired term in such manner as may be prescribed by law, or, if no provision be made by law, by appointment by the governor for the unexpired term.

As noted above, no provision has been made by law for filling the present vacancy. Faced with this legislative hiatus it is clear that article III, section 6 of the constitution has empowered the Governor to fill the vacancy.

In applying this constitutional provision we avoid the problem faced in HRS § 17-3 as amended since the Governor is authorized to make the appointment without restriction as to political party. Nor is any problem raised with respect to the duration of the appointment. Article III, section 6 states that the appointment shall be for the "unexpired term." In this case, since the appointment is to fill a vacancy in the State Senate, the appointee will hold office for the remainder of the four-year term, as set forth in article III, section 5 of the Hawaii Constitution. We hold, therefore, that since no statutory provision has been enacted prescribing the manner for filling the vacancy in the present case, it may be filled only by the Governor, in accordance with article III, section 6 of the Hawaii Constitution.

The proclamation for a special election issued by the respondent is void and the respondent is enjoined from conducting the special election called for in the proclamation.

*George Pai and Roy Miyamoto,* Deputy Attorneys-Gen-

416

eral (*Bertram T. Kanbara,* Attorney General, State of Hawaii, of counsel) for Petitioner.

*Robert G. Dodge,* for respondent.

---

DISSENTING OPINION OF MARUMOTO, J.

I dissent. The decision of the court is based on the construction placed by the majority of the justices on article III, section 6, of the State constitution, which reads: "Any vacancy in the legislature shall be filled for the unexpired term in such manner as may be prescribed by law, or, if no provision be made by law, by appointment by the governor for the unexpired term."

The position of the majority is that the death of Senator Kuriyama created a "vacancy", within the meaning of that word as used in article III, section 6; that no provision has been made by law to fill such a vacancy; and that, in the circumstance, the clause "by appointment by the governor for the unexpired term" applies.

I agree with the majority that there is no statute which is applicable to the existing situation. HRS § 17-3 applies only to a situation where a senatorial seat had once been occupied and the incumbent senator became unavailable for service because of death or for some other reason. Here, the senatorial seat to be filled had no prior incumbent. Senator Kuriyama was a candidate for, and not an incumbent of, that seat.

My disagreement with the majority is on the meaning to be given to the word "vacancy", which is a multi-faceted word without any technical meaning. As applied to a legislative seat, it may mean a situation where a seat has been unoccupied from the very beginning because no one was elected to fill it; or, it may mean a situation where a seat was once filled but later became unoccupied. I

think that in the context of article III, section 6, it means the latter.

One of the rules applicable to the construction of a language used in the constitution, as in the case of a statutory language, is that the word be construed in the light of the context in which it is used. In article III, section 6, the word "vacancy" is tied up with the words "for the unexpired term." If the framers of the constitution intended to grant to the governor the power to fill an office left vacant from the very beginning, there was no reason for limiting the power of appointment to any unexpired term.

Another applicable rule of construction is that where a constitutional language has been construed "contemporaneously with the adoption of the constitution, and by those who had opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention." 1 T. Cooley, *A Treatise on the Constitutional Limitations* 144 (8th ed. 1927). Since the adoption of the State constitution, the legislature has acted on three occasions to implement article III, section 6. S.L.H. 1959 (1st sp.), c. 11; S.L.H. 1963, c. 100; S.L.H. 1970, c. 26. In every one of those occasions, the legislature dealt only with a situation where a legislative seat became vacant after it had once been filled, a clear indication that it did not construe article III, section 6, as covering a situation where a legislative seat remained unfilled from the beginning because of vacancy in candidacy. Particularly significant is the action of the Fifth Legislature in unanimously enacting S.L.H. 1970, c. 26, which contains the current version of HRS § 17-3. In that legislature were 32 members of the Constitutional Convention of 1968, of whom 10 were senators and 22 were representatives, including the chairman of the respective house and senate

judiciary committees which recommended the passage of the bill.

There is also the rule that "the effect and consequence of a particular construction is to be examined, because, if a literal meaning would involve a manifest absurdity, it ought not to be adopted." 1 J. Story, *Commentaries on the Constitution of the United States* 295 (1873). The following will illustrate a possible absurd consequence of this court's construction of article III, section 6: Suppose, in a future election, there is a vacancy in candidacy for a senate seat, and suppose, also, at the same election a new governor is elected because the incumbent governor did not stand for reelection or was defeated. Under article IV, section 1, the new governor does not take office until the first Monday in December following the election. In the meantime, the incumbent governor, who may belong to a different party, can appoint his friend to the senate for as long as one day short of four years. He may not make the appointment for the full four years because that will not be "for the unexpired term."

The court's construction of article III, section 6, harbors another anomalous consequence. If a senatorial candidate dies within ten days of a general election and the chief election officer declares the candidacy vacant under HRS § 11-118, the governor is empowered to appoint a senator for a term ending on the day of the second general election after the general election at which the candidacy was declared vacant. But if the candidate is successful and dies the day after the general election, the governor may appoint a successor only for a term ending on the day of the next general election, a period two years shorter, by reason of the operation of HRS § 17-3.

I think the fact is that the framers of the constitution never gave any thought to the situation where any legislative seat would be left unfilled at the general election,

and thereby left a gap. In such a case, the court has two alternatives, either let the matter ride without any action on the principle that it may not supply a *casus omissus*, or it may fill the gap in the exercise of its acknowledged power of interstitial judicial legislation.

It is my understanding that the majority position is based partly on the view that a contrary construction of article III, section 6, will embark the court on judicial lawmaking. But I think that a construction of a constitutional language not warranted by applicable rules of construction is in essence a form of judicial legislation.

I think that in the existing situation, this court should not stand idle, but provide a solution within the "walls of the interstices." Cardozo, *The Nature of the Judicial Process* 129 (1921). The walls of the interstices indicated in the constitution are that the senators are originally to be elected at general election. The next general election is two years away, and so the best alternative is special election.

This is a case where frank acknowledgment and exercise of the power of judicial legislation does less harm than a strained construction to avoid the exercise of such power. In this connection, the following statement of Sir Frederick Pollock is pertinent: "The Court should be even valiant to override the merely technical difficulties of professional thinking, and also current opinions having some show of authority, in the search for a solution which will be acceptable and in a general way intelligible to reasonable citizens, or the class of them whom the decision concerns." Pollock, "Judicial Caution and Valor," in *Jurisprudence in Action,* Legal Essays Selected by The Association of the Bar of the City of New York 373 (1953). In quoting the foregoing, I am acutely conscious of the self-restraint that the judiciary must exercise.

Another point made in the opinion of the court is that

the chief election officer has no power to call a special election. I agree. But this is a case equitable in nature, although it has been submitted under HRS § 631-1, for it requests injunctive relief. I think that in the exercise of its equity power, this court may authorize the chief election officer to hold a special election in the manner he proposed in his proclamation. This is akin to the power the various courts exercised in reapportionment cases under *Baker v. Carr,* 369 U.S. 186 (1962), and subsequent decisions of the United States Supreme Court.