93 P.3d 670

**Colleen HANABUSA, Plaintiff–Appellant, Cross–Appellee,**

v.

**The Honorable Linda LINGLE, in her official capacity as Governor of the State of Hawai'i; Paul T. Kawaguchi, in his official capacity as Clerk of the Senate; Patricia Mau–Shimizu, in her official capacity as Clerk of the House of Representatives, Defendants–Appellees, Cross–Appellees**

**and**

**Ko Olina Beach Lagoon Estates, LLC, Intervenor–Appellee, Cross–Appellant.**

No. 25491.

Supreme Court of Hawai'i.

June 25, 2004.

Colleen Hanabusa, on the briefs, plaintiff-appellant/cross-appellee pro se.

Girard D. Lau, Deputy Attorney General, on the briefs, for defendants-appellees/cross-appellees.

Todd K. Apo, Honolulu, on the briefs, for intervenor-appellee/cross-appellant.

Paul Alston and Thomas E. Bush of Alston Hunt Floyd & Ing, Honolulu, on the briefs, for amicus curiae DFS Group L.P.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by NAKAYAMA, J.

Plaintiff-appellant/cross-appellee Colleen Hanabusa (Hanabusa) appeals from the order and judgment of the circuit court of the first circuit, the Honorable Virginia Lea Crandall presiding, (1) denying Hanabusa's motion for summary judgment and intervenor-appellee/cross-appellant Ko Olina Beach Lagoon Estates, LLC's (Ko Olina) joinder therein, and (2) granting the then governor, Benjamin J. Cayetano [1] [hereinafter, "the then governor"], in his official capacity as

---

1. Because Hanabusa challenged the specific actions of Benjamin J. Cayetano, in his official capacity as the then governor of the State of Hawai'i, Benjamin J. Cayetano will be referenced *infra,* notwithstanding this court's order of substitution.

governor of the State of Hawai'i, Paul T. Kawaguchi (Kawaguchi), in his official capacity as Clerk of the Senate, and Patricia Mau-Shimizu's (Shimizu), in her official capacity as Clerk of the House of Representatives, [hereinafter, collectively, "the appellees"] motion in the alternative for summary judgment. On appeal, Hanabusa argues that the circuit court erred in granting summary judgment in favor of the appellees, inasmuch as (1) the then governor failed to provide the legislature with ten days' notice of his intent to return thirteen bills with objections, and (2) the then governor improperly transmitted, and Kawaguchi and Shimizu improperly accepted, the thirteen bills, in violation of article III, section 16 of the Hawai'i Constitution. As such, Hanabusa maintains that the then governor's vetoes are void and the bills are law, effective July 9, 2002.

On cross-appeal, Ko Olina argues that the circuit court erred in denying Hanabusa's motion for summary judgment and Ko Olina's joinder therein. Ko Olina maintains that the governor must wait until the day after the ten-day notice period expires before returning bills, inasmuch as returning bills on the tenth day equates to failure to give ten days' notice. As such, Ko Olina contends that the then governor should have returned the bills on July 10, 2002, the day after the forty-fifth day. Accordingly, Ko Olina argues that, because the then governor failed to comply with article III, section 16, the thirteen bills are now law.

We disagree. The plain language of article III, section 16 requires the governor to (1) give notice at any time before midnight on the tenth day prior to the forty-fifth day after adjournment *sine die*, and (2) return the bills he or she intends to veto no later than the forty-fifth day after adjournment *sine die*. Accordingly, we affirm the circuit court's order and judgment.

## I. BACKGROUND

### A. Factual History

On May 2, 2002, the 2002 Session of the Twenty–First Legislature adjourned *sine die*.[2] On June 24, 2002, at 5:47 p.m. and 5:50 p.m., the then governor gave notice by Proclamations to the Speaker of the House and the Senate President, respectively, of his plan to veto thirteen bills Hanabusa supported.[3] On June 24, 2002, the then governor also transmitted the thirteen bills to the respective Houses with his statement of objections.

On June 26, 2002, Hanabusa requested an opinion from the Attorney General as to whether the then governor complied with article III, section 16 of the Hawai'i Constitution in providing the required ten days' notice. By letter dated July 8, 2002, the Attorney General opined, *inter alia*, that the then governor's actions were timely. Thereafter, on July 8, 2002, Hanabusa filed a petition for writ of mandamus directed to public officers, which this court subsequently denied without prejudice.

### B. Procedural History

On July 25, 2002, Hanabusa filed a complaint against the appellees. In her com-

---

**2.** The Senate adjourned at 4:55 p.m. and the House of Representatives adjourned at 6:19 p.m.

**3.** The thirteen bills Hanabusa voted in favor of, which the then governor planned to veto, were:
1. HB 1245, A Bill for an Act Relating to the State Budget;
2. HB 1777, A Bill for an Act Relating to Public Utilities;
3. HB 1800, A Bill for an Act Relating to the State Budget;
4. HB 2002, A Bill for an Act Relating to Public Lands;
5. HB 2723, A Bill for an Act Relating to Counties;
6. SB 233, A Bill for an Act Relating to Chiropractic;
7. SB 720, A Bill for an Act Relating to Prohibition of Discrimination by Public Entities Towards Individuals with Disabilities;
8. SB 2306, A Bill for an Act Relating to Transportation;
9. SB 2383, A Bill for an Act Relating to Taxation to Stimulate the Economy;
10. SB 2431, A Bill for an Act Relating to Campaign Spending;
11. SB 2816, A Bill for an Act Relating to Student Loans for Teachers;
12. SB 2907, A Bill for an Act Relating to Taxation; and
13. SB 3047, A Bill for an Act Making an Appropriation for the Waipahu Community Adult Day Health Center and Youth Day Care Center Pilot Project.

plaint, Hanabusa alleged that the appellees violated article III, section 16, inasmuch as (1) the then governor failed to give the legislature the required ten days' notice that he planned to return the thirteen bills with objections, and (2) Kawaguchi and Shimizu accepted the thirteen bills prior to the forty-fifth day after adjournment *sine die*. Hanabusa prayed for declaratory relief to this effect.

On August 21, 2002, Hanabusa moved for summary judgment on her complaint for declaratory relief, arguing that (1) the then governor clearly and unambiguously violated the ten days' notice requirement, (2) the thirteen bills were improperly transmitted before the forty-fifth day, (3) the constitution must be strictly construed when the governor is exercising legislative power, and (4) because the bills were not properly returned, the bills were not vetoed. The appellees filed a motion to dismiss Hanabusa's complaint, or, in the alternative, for summary judgment, on August 22, 2002. In addition, on September 5, 2002, the appellees filed a memorandum in opposition to Hanabusa's motion for summary judgment, arguing that (1) Hanabusa lacked standing to bring suit, and (2) the then governor complied with article III, section 16 when he gave notice on June 24, 2002, and returned the bills.

On September 5, 2002, Ko Olina petitioned the circuit court for intervention. Ko Olina sought intervention because SB 2907, which was one of the bills the then governor vetoed, had a direct effect on Ko Olina, inasmuch as it provided up to $75,000,000.00 in tax credits for its planned development, and, therefore, Ko Olina wanted to adequately protect its interests. On September 13, 2002, Ko Olina brought a motion to join Hanabusa's motion for summary judgment. On October 18, 2002, the circuit court granted Ko Olina's motion to intervene.

On October 24, 2002, the circuit court issued an order denying Hanabusa's motion for summary judgment and Ko Olina's joinder therein and granting the appellees' motion in the alternative for summary judgment. Judgment was entered on October 24, 2002. Hanabusa timely appealed.

## II. STANDARD OF REVIEW

### A. Summary Judgment

 This court reviews a circuit court's grant or denial of summary judgment *de novo. Hawai'i Cmty. Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is well settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations, internal quotation marks, and some brackets omitted).

### B. Constitutional Interpretation

 "Issues of constitutional interpretation present questions of law that are reviewed *de novo.*" *Blair v. Harris*, 98 Hawai'i 176, 178, 45 P.3d 798, 800 (2002) (citation omitted). In construing the constitution, this court observes the following basic principles:

Because constitutions derive their power and authority from the people who draft and adopt them, we have long recognized that the Hawaii Constitution must be construed with due regard to the intent of the framers and the people adopting it, and the fundamental principle in interpreting a constitutional provision is to give effect to that intent. This intent is to be found in the instrument itself.

[T]he general rule is that, if the words used in a constitutional provision are clear and unambiguous, they are to be construed as they are written. In this regard, the settled rule is that in the construction of a constitutional provision the words are pre-

sumed to be used in their natural sense unless the context furnishes some ground to control, qualify, or enlarge them.

Moreover, a constitutional provision must be construed in connection with other provisions of the instrument, and also in the light of the circumstances under which it was adopted and the history which preceded it.

*Blair*, 98 Hawai'i at 178–79, 45 P.3d at 800–01 (quoting *Hawai'i State AFL–CIO v. Yoshina*, 84 Hawai'i 374, 376, 935 P.2d 89, 91 (1997)) (ellipsis omitted).

## III. DISCUSSION

On appeal, Hanabusa contests the timeliness of the then governor's vetoes. First, Hanabusa maintains that, because "a day is a 24 hour period of time or a 'solar day[,]' " and the use of the apostrophe at the end of "days" in "ten days' notice" evinces the drafters intent that notice was to be of ten full days, the then governor clearly and unambiguously violated the ten days' notice requirement. Next, Hanabusa argues that the then governor improperly transmitted the thirteen bills prior to the forty-fifth day after adjournment *sine die*, and Kawaguchi and Shimizu improperly accepted the thirteen bills, in violation of article III, section 16. Finally, Hanabusa contends that, when the governor exercises legislative power, such as veto power, the constitution must be strictly construed, and, therefore, because both the governor and the legislature benefit from the notice requirement, failure to comply with constitutional provisions renders vetoes void. As such, Hanabusa urges this court to reverse the circuit court's order and declare the thirteen bills law as of July 9, 2002. We disagree.

### A. The then governor complied with article III, section 16 of the Hawai'i Constitution by giving notice of his intent to veto the thirteen bills on June 24, 2002.

█ Hanabusa takes the position that a day is a twenty-four hour period of time. In support of her position, Hanabusa contends that the apostrophe at the end of "days" in "ten days' notice" can only mean ten *full*

days. In addition, Hanabusa asserts that, because article XVII, section 3 requires ten full days of notice, and "days" is written in the same possessive manner as in article III, section 16, "ten days' notice" in article III, section 16 must, therefore, mean ten full days. As such, Hanabusa argues that notice must be provided on the eleventh day prior to the forty-fifth day after adjournment *sine die*. In the alternative, Hanabusa maintains that, if notice is to be provided on the tenth day preceding the forty-fifth day after adjournment *sine die*, the then governor's notice was due, at the very latest, by twelve o'clock noon. The plain language of article III, section 16 of the Hawai'i Constitution, however, does not support Hanabusa's position.

1. *The plain language of article III, section 16 of the Hawai'i Constitution provides that the governor must give notice on or before the tenth day prior to the forty-fifth day after adjournment sine die.*

In construing our constitution, this court must give words their plain and ordinary meaning. The well settled rule "is that, if the words used in a constitutional provision ... are clear and unambiguous, they are to be construed as they are written." *State ex rel. Bronster v. Yoshina*, 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997). In other words, "in the construction of a constitutional provision[,] the words are presumed to be used in their natural sense unless the context furnishes some ground to control, qualify, or enlarge them." *Hawai'i State AFL–CIO*, 84 Hawai'i at 376, 935 P.2d at 91 (citation omitted).

Article III, section 16 of the Hawai'i Constitution reads, in relevant part:

### RECONSIDERATION AFTER ADJOURNMENT

*The Governor shall have forty-five days, after the adjournment of the legislature sine die, to consider bills presented to the governor less than ten days before such adjournment, or presented after adjournment, and any such bill shall become law*

*on the forty-fifth day unless the governor by proclamation shall have given ten days' notice to the legislature that the governor plans to return such bill with the governor's objections on that day.* The legislature may convene at or before noon on the forty-fifth day in special session, without call, for the sole purpose of acting upon any such bill returned by the governor. In case the legislature shall fail to so convene, such bill shall not become law. Any such bill may be amended to meet the governor's objections and, if so amended and passed, only one reading being required in each house for such passage, it shall be presented again to the governor, but shall become law only if the governor shall sign it within ten days after presentation.

*In computing the number of days designated in this section, the following days shall be excluded: Saturdays, Sundays, holidays and any days in which the legislature is in recess prior to its adjournment as provided in section 10 of this article.*

(Emphases added.) Applying the plain language canon of constitutional construction, the governor (1) has forty-five days to consider bills presented less than ten days before adjournment or bills presented after adjournment, (2) must give notice by proclamation ten days prior to the forty-fifth day after adjournment *sine die* of plans to return the bills with objections, and (3) must return the bills no later than that day. As such, by the plain language of article III, section 16, "ten days' notice" can only be construed to mean that notice must be given no less than ten days *before* a particular date, excluding weekends and holidays. The language of article III, section 16 is clear and unambiguous, and there is no room to construe the provisions in question to reach the interpretation that Hanabusa proposes.

2. *"Ten days' notice" was any time before midnight on June 24, 2002.*

Hanabusa's claim that notice must be given eleven days before the particular date in

order to provide "ten days' notice" is contrary to the plain, literal, and natural reading of article III, section 16. In fact, nothing in its plain language suggests that the governor must give *eleven* days' notice. Contrary to Hanabusa's contention, "ten days' notice" does not mean ten *full* twenty-four hour days. Moreover, the words of article III, section 16 cannot be construed to mean that notice must be provided by twelve o'clock noon on the tenth day preceding the forty-fifth day after adjournment *sine die.* If the framers intended the governor give notice by a particular time of day, they would have expressly specified such time in the provisions of article III, section 16.[4] *See generally Hawaii State AFL–CIO,* 84 Hawai'i at 381, 935 P.2d at 96 ("[W]here [the framers] include[ ] particular language in one section of a [constitutional provision], but omit[ ] it in another ... it is generally presumed that [the framers] act[ed] intentionally and purposefully in the disparate inclusion or exclusion."). Indeed, in the absence of any restriction of the word "day," the then governor had up to midnight of the tenth day prior to the forty-fifth day after adjournment *sine die. See Formin v. Mengel,* 38 Haw. 443, 444–45 (1949) (noting that, when a person is required to perform an act within a given number of days, the act must occur at any time prior to midnight of the relevant day); *see also Durstin v. Dodge,* 138 Me. 12, 20 A.2d 671, 673 (1941) (explaining that, where one is given a stated number of days in which to perform an act, he may perform at any time up to midnight of the last day).

Furthermore, Hanabusa's reliance on article XVII, section 3 of the Hawai'i Constitution for the proposition that "ten days' notice" in article III, section 16 means ten full days is misplaced. Article XVII, section 3 governs constitutional amendments proposed by the legislature, and provides, in relevant part:

The legislature may propose amendments to the constitution by adopting the same,

---

4. The framers' reference to days and not hours was intentional and purposeful. In fact, the only reference to a specific time in article III, section 16 is that "[t]he legislature may convene *at or before noon* on the forty-fifth day in special session, without call, for the sole purpose of acting upon any such bill returned by the governor." (Emphasis added.) Accordingly, if the framers intended the governor to give notice at a specific time ten days prior to the forty-fifth day after adjournment, the framers would have expressly enumerated such time.

in the manner required for legislation, by a two-thirds vote of each house on final reading at any session, *after* either or both houses shall have given the governor *at least ten days' written notice* of the final form of the proposed amendment, or, with or without such notice, by a majority vote of each house on final reading at each of two successive sessions.

(Emphasis added.) Under the plain language of article XVII, section 3, a vote on a constitutional amendment may only come "after" the notice period, while under article III, section 16, a bill shall become law forty-five days after the legislature adjourns unless the governor "shall have given ten days' notice" of intention to return the bills with objections. As such, article XVII, section 3 measures notice in *calendar* days, not business days. Accordingly, unlike the plain meaning of "ten days' notice" under article III, section 16, "ten days' written notice" in article XVII, section 3 means ten *full* days.

In the instant case, the legislature adjourned *sine die* on May 2, 2002. Pursuant to the plain language of article III, section 16, forty-five days after May 2, 2002, excluding holidays and weekends, was July 9, 2002.[5] As such, in compliance with article III, section 16, ten days prior to July 9, 2002 was June 24, 2002. *See supra* note 5. Accordingly, the then governor was required to give notice by proclamation of his plan to veto the bills by midnight on June 24, 2002. The then governor did so, and, therefore, acted timely.

**B. The then governor did not improperly transmit the thirteen bills, and Kawaguchi and Shimizu did not improperly accept the thirteen bills.**

Hanabusa also argues that, because the then governor returned the thirteen bills

5. The following tables represent the calendar from May 2002 until July 2002.

### May

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
| --- | --- | --- | --- | --- | --- | --- |
| | | | 1 | 2 Sine Die | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 Holiday | 28 | 29 | 30 | 31 | |

### June

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 Holiday | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

### July

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
| --- | --- | --- | --- | --- | --- | --- |
| | 1 | 2 | 3 | 4 Holiday | 5 | 6 |
| 7 | 8 | 9 | | | | |

on June 24, 2002, he failed to comply with constitutional requirements. In other words, Hanabusa contends that the thirteen bills, along with the then governor's statement of objections, could *only* be returned on the forty-fifth day after adjournment *sine die.* Correlatively, Hanabusa maintains that, by accepting the thirteen bills before the forty-fifth day after adjournment *sine die,* Kawaguchi and Shimizu violated article III, section 16. As such, Hanabusa urges this court to impose consequences for prematurely returning bills. Because the plain language of article III, section 16 does not preclude the governor from returning bills prior to the forty-fifth day after adjournment *sine die,* we disagree with Hanabusa's argument.

As discussed *supra,* in section III.A.1, this court must interpret the words of the constitution by their plain and ordinary meaning, and construe them in connection with the constitution's other provisions. The plain language of article III, section 16 requires that bills presented to the governor less than ten days before adjournment or after adjournment shall become law on the forty-fifth day after adjournment *sine die* "unless the governor by proclamation shall have given ten days' notice to the legislature that the governor plans to return such bills with the governor's objections on that day." There is no language in article III, section 16 that mandates the governor to return the bills only on the forty-fifth day. In fact, nothing in the provisions of article III, section 16 can be read to prevent the governor from returning the bills earlier. Construing the words of article III, section 16 in conjunction with the entire constitutional provision, a rational, sensible, and practical interpretation of article III, section 16 permits the governor to return the bills for the legislature's consideration prior to, but no later than, the forty-fifth day after adjournment *sine die.* In other words, the governor cannot return the bills on the forty-sixth day after adjournment *sine die.* Indeed, nothing in this interpretation contradicts the plain and ordinary reading of article III, section 16.

In the instant case, the forty-fifth day after adjournment *sine die,* excluding weekends and holidays, was July 9, 2002. Pursuant to the plain language of article III, section 16, the then governor was required to return the thirteen bills on July 9, 2002. The then governor, however, returned the thirteen bills on June 24, 2002. Kawaguchi and Shimizu accepted the bills on June 24, 2002. Inasmuch as the then governor considered the thirteen bills and returned them prior to July 9, 2002, a rational, sensible, and practical interpretation of article III, section 16 does not preclude the governor from acting as he did. Accordingly, by returning and accepting the thirteen bills on June 24, 2002, the appellees satisfied constitutional requirements, consistent with the framers' intent.

This court further recognizes that the governor and the legislature are co-equal branches of government. *Cf. Akizaki v. Fong,* 51 Haw. 354, 362, 461 P.2d 221, 225 (1969) (Abe, J., dissenting) (recognizing that "the three branches of government, that is, the executive, the legislative and the judiciary are independent and co-equal"). Nothing in the language of article III, section 16 precluded the legislature from acting upon the then governor's vetoes. Indeed, strictly construing article III, section 16 according to its plain language, the legislature still had "ten days' notice" to decide whether it would convene in special session to override the then governor's vetoes. *See* Haw. Const. art. III, § 16.

## C. Inasmuch as the appellees were entitled to summary judgment, we disagree with Ko Olina's arguments on cross-appeal.

On cross-appeal, Ko Olina contends that the then governor failed to comply with article III, section 16 by returning the bills on June 24, 2002, inasmuch as the governor must give ten days' notice before returning the bills. As such, Ko Olina maintains that,

> to have properly vetoed the [t]hirteen [b]ills, the [then g]overnor's notice should have been given on June 21, 2002 so that the ten days' notice period expired on July 8, thus allowing the [then g]overnor to return such bills with his objections to the [l]egislature on July 9, 2002, prior to the expiration of the forty-five day period.

(Footnote omitted.) We disagree. The plain language of article III, section 16 requires the governor to (1) give notice at any time before midnight ten days prior to the forty-fifth day after adjournment *sine die,* and (2) return the bills he or she intends to veto no later than the forty-fifth day after adjournment *sine die.* Accordingly, the appellees were entitled to summary judgment.

## IV. CONCLUSION

Viewing the evidence in the light most favorable to the appellees, Hanabusa and Ko Olina have failed to demonstrate a plain, clear, manifest, and unmistakable violation of article III, section 16 of the Hawai'i Constitution. As such, we affirm the circuit court's order and judgment.